615 A.2d 408

**COMMONWEALTH of Pennsylvania**

v.

**Charles ISELEY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 15, 1992.

Filed Oct. 22, 1992.

366

Denise L. Marley, Asst. Public Defender, Doylestown, for appellant.

Alan M. Rubenstein, Dist. Atty., Doylestown, for Com., appellee.

Before TAMILIA, KELLY, and MONTGOMERY, JJ.

KELLY, Judge:

In this case, we are called upon to determine whether a defendant may motion to withdraw a second or subsequent guilty plea based upon a mere assertion of innocence. We find that he may not and affirm.

The facts of this case have been properly set out by the trial court as follows.

1. On July 19, 1983, while represented by the Bucks County Public Defender, defendant entered guilty pleas to six separate informations.

The principal offenses in each of the six cases were:

| Case No. | Principal Offense | Victim(s) |
| --- | --- | --- |
| 1372/83 | Robbery | Michael Geiger, Cindy Walker |
| 1373/83 | Robbery | Linda Knight, Ralph DeDonado |
| 1374/83 | Robbery | Kevin Michael Walker |
| 1375/83 | Robbery | Joseph Hamann |
| 1513/83 | Robbery | Mark George |
| 1576/83 | Robbery | John, David & Helen Collins and Mary Beth Daley |

Following extensive colloquy with defendant, the Honorable Oscar S. Bortner accepted the guilty pleas, deferred sentence and ordered a pre-sentence investigation by the Bucks County Department of Probation and Parole.

2. On August 4, 1983, defendant filed a petition to withdraw his guilty pleas. On August 10, 1983, Judge Bortner allowed the pleas to be withdrawn.

3. Thereafter, the cases were again scheduled for jury trial on September 19, 1983. On that date, while then represented by private counsel, Theodore Thompson, Esquire, defendant, for a second time, entered open guilty pleas to all of the above informations. After extended colloquy with defendant, we accepted his pleas again, deferred sentence for completion of the pre-sentence investigation and for a psychological evaluation.

4. During the original guilty plea of July 19, 1983, and the second plea of September 19, 1983, a co-conspirator, Michael Metzler, also pleaded guilty to four of the same offenses. (The Hamann and Mark George robberies involved only Iseley). A joint colloquy was conducted on each occasion.

5. At the July 19, 1983 guilty plea, the offenses were explained in detail by Judge Bortner with maximum permissible sentences on each count disclosed first to Metzler.

Iseley acknowledged that he understood the nature of the charges as explained to Metzler. Then the separate informations applicable to Iseley were explained by Judge Bortner with the sentence maximums on each information and the total of all potential sentences, if consecutive (352 years). Iseley acknowledged he understood. (N.T. 7/19/83, 4–17).

6. On July 19, 1983, after some hesitation and after a recess to permit him to confer with counsel, defendant Iseley was asked the following by Judge Bortner (N.T. 23):

THE COURT: I want a clear statement that you did each and every one of the acts with which you are charged. If you did not do them, then don't admit them. I am not pushing you to admit to something you did not do.

Now, you're the one that knows whether you did them or not. I wasn't there. You were.

So, now, did you do these things or not?

MR EISELE [sic: ISELEY]: Yes, I did Your Honor.

7. On July 19, 1983, following acceptance of the guilty pleas, the District Attorney then introduced his detailed evidence on each of the six instant informations including detailed descriptions of the two bank teller machine robberies (1513/83 and 1375/83) involving only Iseley, with evidence that the proceeds thereof were found in defendant's gym bag. There was also police testimony about the details of the robberies at the Kevin Walker house, the Geiger–Walker house, the Knight–DeDonado house and the Collins–Daley house. In each of the last four, Metzler was a co-conspirator.

8. Following withdrawal of the first guilty plea, defendant, at the September 19, 1983 guilty plea hearing, again stated unequivocally (N.T. 9/19/83, 47–48) that he was pleading guilty because he was satisfied that he really was guilty of each of the offenses charged.

9. The colloquy at the September 19, 1983 hearing covered in detail the following matters: opportunity to confer with counsel prior to the plea, satisfaction with counsel's knowledge of the underlying facts and his explanation of the legal

principles, the difficulty in securing a withdrawal of a second plea of guilty, inquiry as to the requirements that a plea be voluntary, waiver of jury trial and rights to participate in jury selection, the necessity of a unanimous verdict, right to a non-jury trial, reasonable doubt and the presumption of innocence, waiver of the right to confront witnesses, waiver of right to pursue further any pre-trial motions under Rule 1100 or for suppression of evidence, rights not waived by a guilty plea and the fact that a guilty plea has the same effect as a verdict of guilty. (N.T. 8–19).

10. Thereafter, (N.T. 19–47) we outlined in detail the elements of robbery including theft and defined the nature of a serious injury involved with a robbery threat; the elements of burglary and the entry into a building with intent to commit a robbery; criminal trespass, possession of an instrument of crime; simple assault; and conspiracy. We then outlined with each defendant the specific cases involving each of the victims and named the victims in each case. (N.T. 19–34) The maximum sentence potential in each information was then reviewed with Iseley by his counsel, Mr. Thompson, with the total potential maximum detailed by the District Attorney.

11. Defendants Iseley and Metzger each then responded affirmatively to the following question:

THE COURT: Now, I would ask each of you, are each of you in fact pleading guilty because you are satisfied that you are guilty to all of these different very serious offenses which are charged against you, is that your reason for pleading guilty that because you are satisfied that you really are guilty, Mr. Metzler?

MR. METZLER: Yes, sir.

THE COURT: Mr. Iseley?

MR. ISELEY: Yes.

(N.T. 47–48)

12. Upon acceptance of the pleas, the District Attorney again summarized the evidence, defendant Iseley heard testimony as to the detailed facts in case number 1375, 1512, 1374, 1373, 1377 and 1576 of 1983 from Detective Hart and

Officer Karl Alscher of Middletown Township and Detective John Tegzes of Bristol Township. (N.T. 53–98).

13. On November 16, 1983, a motion to withdraw the second guilty plea was filed. We held a hearing on that motion on December 12, 1983 and denied the motion.

14. On the same date, we sentenced defendant to concurrent terms of 7–1/2 to 15 years on case numbers 1372, 1373, 1374, 1375 and 1513 of 1983 and a consecutive term of 5 to 10 years on number 1576 of 1983. We advised defendant of his right to file a motion challenging the validity of the sentence within ten (10) days and to file an appeal within thirty (30) days after any final order. (N.T. 12/12/91, p. 182). No post sentence motions were filed in the trial court and no direct appeal was taken.

Trial Court Opinion at 2–7.

On February 28, 1991, appellant filed a PCRA petition. A hearing was held on October 16, 1991, and appellant's PCRA petition was denied. This timely appeal followed.

Appellant raises the following two issues on appeal:

A. WHETHER DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO APPEAL THE DENIAL OF THE MOTION TO WITHDRAW APPELLANT'S GUILTY PLEA.

B. WHETHER DEFENSE COUNSEL WAS INEFFECTIVE IN FAILING TO ASSURE THAT THE GUILTY PLEA ENTERED WAS KNOWING, INTELLIGENT AND VOLUNTARY WHEN THE TRIAL COURT FAILED TO INFORM THE APPELLANT OF THE NATURE AND ELEMENTS OF THE OFFENSES CHARGED.

Appellant's Brief at 3.

Appellant first contends that his counsel was ineffective for failing to appeal the trial court's denial of his motion to withdraw his second guilty plea. He argues that a bare assertion of innocence is sufficient to allow withdrawal of his second guilty plea. We disagree.

The standard for determining if counsel was ineffective is well settled. In *Commonwealth v. Thomas,* 396 Pa.Super. 92, 98–99, 578 A.2d 422, 425 (1990), this Court held:

> In order to establish a claim of ineffectiveness, appellant must establish that: by act or omission counsel was arguably ineffective; counsel's act or omission could not have had a reasonable basis designed to effectuate appellant's interests; and appellant was prejudiced by the act or omission in that but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different.

(quoting *Commonwealth v. Petras,* 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987)) (citations omitted). To gain relief under the P.C.R.A. statute, however, appellant must also show that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilty or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii); *Commonwealth v. Thomas, supra,* 396 Pa.Super. at 98, 578 A.2d at 425.

There is no absolute right to withdraw a guilty plea. *Commonwealth v. Hayes,* 462 Pa. 291, 341 A.2d 85 (1975). Courts have the discretion to permit or direct a guilty plea to be withdrawn at any time before sentencing. *Commonwealth v. Coles,* 365 Pa.Super. 562, 530 A.2d 453 (1987); Pa.R.Crim.P. 320. When a defendant moves to withdraw his plea prior to sentence, he need only show a "fair and just" reason for the withdrawal and a lack of substantial prejudice to the Commonwealth. *Commonwealth v. Anthony,* 504 Pa. 551, 475 A.2d 1303 (1984); *see also Commonwealth v. Jackson,* 390 Pa.Super. 639, 569 A.2d 964 (1990).

In 1973, the Pennsylvania Supreme Court, in *Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973), reversed judgment of sentence and granted a new trial on the basis that a mere assertion of innocence was a "fair and just" reason for the pre-sentence withdrawal of a guilty plea absent substantial prejudice to the Commonwealth. While never overruled, the continuing wisdom of the *Forbes* decision has been called into question on several occasions.

For example, in *Commonwealth v. Cole*, 387 Pa.Super. 328, 564 A.2d 203 (1989), an *en banc* panel of this Court was presented with the question of whether the mere assertion of innocence alone was a fair and just reason to allow pre-sentence withdrawal of a guilty plea where the motion to withdraw was filed only after it became clear that a key witness against the defendant had returned to her home in Georgia. This Court reasoned that:

> A criminal defendant will not be permitted to play fast and loose with the guilty plea process in order to delay prosecution or jeopardize the Commonwealth's ability to prove guilt.... To permit him to withdraw his guilty plea after the witness had returned to her home in Georgia would be to permit appellant to use his motion to withdraw for the improper purpose of gambling on the Commonwealth's ability to produce the witness for a second trial. This is the type of prejudice to the Commonwealth against which the rule was intended to protect.
>
> \*    \*    \*    \*    \*    \*
>
> So many safeguards have been imposed by law to ensure that a guilty plea is voluntarily and knowingly made, that a defendant should not be permitted to withdraw his guilty plea, even before sentencing, merely by intoning the allegation that "I am not guilty," where, as here, his plea of guilty was supported by an extensive colloquy in which the defendant expressly admitted guilt.[6]

> 6. Although we are required to follow the law as pronounced by the Supreme Court in *Commonwealth v. Forbes, supra, one cannot help but question whether the rationale which has called for different standards for withdrawing pleas of guilty before sentencing and after sentencing is not wrong in its focus.* As it pertains to a pre-sentence motion to withdraw, it diminishes the gravity of the entry of a guilty plea under Pa.R.Crim.P. 319 to allow the plea to be withdrawn prior to sentencing upon a bald assertion of innocence. Would it not be better— even more realistic—to hold that after a guilty plea hearing has been held under Rule 319 and the guilty plea

has been entered by the defendant and accepted by the court, then such a plea may be withdrawn, either before or after sentencing, only to avoid prejudice in the nature of a manifest injustice? Such a uniformly applied rule would discourage the gamesmanship that is apparent in the instant case and would elevate the guilty plea hearing to the formal confession of guilt envisioned by the Supreme Court in *Commonwealth v. Anthony, supra*.

*Commonwealth v. Cole, supra* 387 Pa.Super. at 334–36, 564 A.2d at 206–07 (emphasis added).

Similarly, in *Commonwealth v. Rish*, 414 Pa.Super. 220, 606 A.2d 946 (1992), this Court was again asked to decide whether the mere assertion of innocence was sufficient cause to allow the pre-sentence withdrawal of a guilty plea. Therein, the Commonwealth had not asserted and the record did not contain any evidence of prejudice to the Commonwealth resulting from the withdrawal. Bound by the decision in *Forbes*, this Court reversed judgment of sentence, but noted that:

[W]e are in agreement with many of our colleagues who have expressed dissatisfaction with the standard set out in *Forbes*. The developments in the guilty plea colloquy have successfully fulfilled the policy concerns underlying *Forbes*. The court in *Forbes* asserted that the liberal rule for withdrawal of a guilty plea before sentencing is consistent with the efficient administration of justice because it reduces the number of appeals contesting whether the plea was knowing and voluntary. *Commonwealth v. Forbes*, 450 Pa. 185, 191, 299 A.2d 268, 271 (1973). However, an extensive colloquy is more effective in conserving judicial resources than the *Forbes* standard. We agree with *Commonwealth v. Turiano*, 411 Pa.Super. 391, 601 A.2d 846, 852 (1992) that a guilty plea colloquy ensures that a criminal defendant understands the significance of the constitutional rights he is waiving. *See also Commonwealth v. Jones*, 389 Pa.Super. 159, 164, 566 A.2d 893, 895 (1989), *alloc. denied*, 525 Pa. 632, 578 A.2d 926 (1990) (emphasizes importance of colloquy); *Commonwealth v. Ortiz*, 334 Pa.Super. 117, 121–123, 482 A.2d 1110, 1111–1113 (1984) (Dissenting Opinion by

McEwen, J.) (noting that guilty plea colloquy displayed voluntariness of plea). However, as *Forbes* is still the law of this Commonwealth, we are constrained to follow it. *Id.,* 414 Pa.Super. at 225, 606 A.2d at 948. In a concurring opinion, the Honorable Stephen J. McEwen echoed sentiments he had earlier expressed, opining that a more acceptable standard for review of such cases might be that:

> a pre-sentence assertion of innocence may compose the required "fair and just reason" provided that the totality of circumstances reflected by the record does not establish otherwise.

*Commonwealth v. Cole,* 387 Pa.Super. 328, 338–39, 564 A.2d 203, 208 (1989) (Concurring Opinion by McEwen, J.). Such a standard would more wisely serve reason, not to mention the citizenry, without intruding upon the fundamental rights of those defendants who present a valid basis for withdrawal.

*Commonwealth v. Rish, supra,* 414 Pa.Super. at 225, 226, 606 A.2d at 948 (McEwen, J., Concurring); *see also Commonwealth v. Turiano,* 411 Pa.Super. 391, 402, 601 A.2d 846, 852–53 (1992).

■ Whatever its ultimate wisdom, the continuing precedential effect of the *Forbes* decision is irrefutable. Unless and until the decision is overruled, the mere assertion of innocence remains a "fair and just cause" to allow the withdrawal of a guilty plea absent prejudice to the Commonwealth.

Instantly, however, appellant boldly urges that as a matter of law the liberal rule of withdrawal announced in *Forbes* controls even, where as here, an earlier guilty plea had been formerly entered and successfully withdrawn for the same charges. We cannot agree. The *Forbes* Court was not faced with, and thus did not decide, the question of whether a mere assertion of innocence constitutes a "fair and just cause" to allow withdrawal of a *second or subsequent* guilty plea. The same is true for its progeny. Indeed, no case cited by appellant is even remotely supportive of the proposition that an assertion of innocence may alone suffice to support a successful motion to withdraw under such circumstances. As

a matter of law, therefore, the *Forbes* doctrine is simply inapplicable herein.

Moreover, there is no basis in logic to extend the *Forbes* rule to apply to second or subsequent pleas to the same charge. The rule in *Forbes* is made, perhaps over-solicitously, in favor of justice, to protect against the possibility that an innocent defendant will erroneously plead guilty. The rule was not designed, nor intended, to permit the gamesmanship and cyclical manipulation which could quickly become the hallmark of our guilty plea process should we adopt the position urged upon us by appellant. As this Court has previously noted:

> "A guilty plea is not a ceremony of innocence, it is an occasion when one offers a confession of guilty.... The defendant is before the court to acknowledge facts that he is instructed constitute a crime.... He is then to voluntarily say what he knows occurred, whether the Commonwealth would prove them or not, and that he will accept their legal meaning and their legal consequence." *Commonwealth v. Anthony*, 504 Pa. 551, 559, 475 A.2d 1303, 1307–1308 (1984). A criminal defendant who elects to plead guilty *has a duty to answer questions truthfully*. *Commonwealth v. Mitchell*, 319 Pa.Super. 170, 175, 465 A.2d 1284, 1286 (1983). A defendant will not be permitted to postpone the final disposition of his case *by lying to the court* concerning his culpability and thereafter withdraw his plea of guilty by contradicting his prior testimony and asserting innocence. *Cf. Commonwealth v. Brown*, 242 Pa.Super. 240, 363 A.2d 1249 (1976).

*Commonwealth v. Cole, supra,* 387 Pa.Super. at 335, 564 A.2d at 206 (emphasis added). Such concerns apply, *a fortiori,* where as here, the defendant has burdened the system with such withdrawal motions, not once, but twice. Twice appellant was informed of the charges brought against him and the consequences of his guilty plea. Twice appellant was informed of his right to a jury trial and of his right to be presumed innocent. Twice appellant was questioned under oath as to the extent to which he understood this information and be-

lieved himself to be guilty. And twice appellant affirmatively, unequivocally and unambiguously indicated not only his understanding of the charges, his rights, and the consequences of his plea, but also that he was in fact guilty. Had appellant so desired, he could have asserted his innocence on *at least* these two occasions. He did not. Rather, appellant waited until shortly before his second scheduled sentencing date to assert this claim of innocence, offering absolutely no explanation for his delay in doing so.

Appellant's assertion of innocence at this late stage smacks of little other than a self-serving attempt to improperly manipulate the system, and provides perhaps an apotheosis to illustrate the reason for rejecting a rule which allows withdrawal under such circumstances. The rule envisioned by appellant would most certainly make a "mockery of the guilty plea hearing process," *Commonwealth v. Cole, supra,* 387 Pa.Super. at 335, 564 A.2d at 206, providing a ready means, if not an incentive, to perpetrate fraud on the courts. Moreover, the further delay inherent in allowing any second or subsequent guilty plea to be withdrawn on such dubious grounds is a burden too great for our already overcrowded criminal dockets to bear.[1] Even more importantly, given that the accuracy of any subsequent trial (should the prosecution ever reach that stage) is dependent upon the ever fading memories and increasingly uncertain availabilities of the necessary witnesses, the power to prolong the prosecution could serve as a Sword of Damocles for the guilty defendant to suspend over the very heart of the trial, the search for truth.[2] This power, we refuse to confer.

Simply put, we deem it both unwise and unjust to indulge so exceptionally belated an assertion of innocence as one heard first after a second guilty plea has been entered.[3] The possibility that such an assertion is based in fact rather than

1. Cf. *Commonwealth v. Turiano, supra,* 411 Pa.Super. at 402, 601 A.2d at 852 (discussing the squandering of judicial resources inherent in entertaining serial guilty plea colloquies).

2. See *Commonwealth v. Wall,* 413 Pa.Super. 599, 614–15, 606 A.2d 449, 457 (1992).

3. Cf. *Commonwealth v. Boatwright,* 404 Pa.Super. 75, 82, 590 A.2d 15, 20 (1992).

machinations is remote in the extreme; it is a virtual certainty, on the other hand, that a rule which provides for the withdrawal of a second or subsequent guilty plea based on the mere incantation of the words, "I now claim I am innocent," will at once reward the guilty and undermine the integrity of the system. We conclude, therefore, that absent extraordinary circumstances, not present herein, a mere assertion of innocence may not be considered by a reviewing court to be alone a fair and just reason for withdrawal of any second or subsequent guilty plea. Appellant's underlying claim of error is therefore without merit. As such, appellant's contention that his plea counsel was ineffective must fail.

■ Appellant next contends that defense counsel was ineffective for failing to assure that he was specifically informed of all the elements of all offenses for which he was charged and to which he plead guilty. We cannot agree.

■ In *Commonwealth v. Harvey,* 407 Pa.Super. 545, 595 A.2d 1280 (1991), this Court stated that:

> Claims of unlawfully induced guilty pleas based on ineffective assistance have previously been entertained. *See Commonwealth v. Miller, supra* [495 Pa. 177, 433 A.2d 1 (1981)]; *Commonwealth v. Unger,* 494 Pa. 592, 597 n. 4, 432 A.2d 146, 148 n. 4 (1980); *Commonwealth v. Knox,* 304 Pa.Super. 368, 372, 450 A.2d 725, 727 (1982). To be successful, appellant must show that the ineffectiveness caused him to enter an involuntary or unknowing plea. *Commonwealth v. Lutz,* 492 Pa. 500, 505–506, 424 A.2d 1302, 1305 (1981).

*Id.,* 407 Pa.Super. at 549, 595 A.2d at 1282–83. The Pennsylvania Supreme Court has stated "that the importance of the colloquy is to demonstrate that defendant's action is taken voluntarily and intelligently.... The essential element is therefore a recorded demonstration that the defendant is fully aware of the ramifications of his action and is entering his plea voluntarily." *Commonwealth v. Ingram,* 455 Pa. 198, 200, 316 A.2d 77, 78 (1974). Six areas of inquiry have been identified as essential in insuring the validity of a plea. To be lawful, "a guilty plea must include inquiry as to whether: 1) the defendant understood the nature of the charge to which he is

pleading guilty; (2) there is a factual basis for the plea; (3) the defendant understands that he has a right to a jury trial; (4) the defendant understands that he is presumed innocent until he is found guilty; (5) the defendant is aware as to the permissible range of sentences; and (6) the defendant is aware that the judge is not bound by the terms of any plea agreement unless he accepts such agreement." *Commonwealth v. Cole, supra* 387 Pa.Super. at 336, 564 A.2d at 206–07, *citing Commonwealth v. Willis,* 471 Pa. 50, 369 A.2d 1189 (1977); Pa.R.Crim.P. 319. Notwithstanding this apparent check-list approach, it is clear that the determination of whether a guilty plea can withstand a challenge must be based upon the totality of the circumstances surrounding the plea and the challenge must go beyond a mere claim of a technical violation. *Commonwealth v. Owens,* 321 Pa.Super. 122, 467 A.2d 1159 (1983).

■ Thus, consideration of whether a defendant understood the nature of the crimes with which he was charged is not limited to an examination of the direct instruction by the court. *Commonwealth v. Shaffer,* 498 Pa. 342, 350, 446 A.2d 591, 595 (1982); *Commonwealth v. Martinez,* 499 Pa. 417, 453 A.2d 940 (1982). Rather, as this Court has previously held, such factors as the defendant's presence at and understanding of a co-defendant's colloquy during a guilty plea to the same charges may be considered sufficient notice of the elements of the crimes to which a defendant plead guilty. *See Commonwealth v. Harris,* 286 Pa.Super 601, 429 A.2d 685 (1981).[4] Similarly, our Supreme Court had considered the defendant's previous convictions indicative of the knowledge of the elements of such crimes for the purposes of a subsequent guilty plea. *See Commonwealth v. Schultz,* 505 Pa. 188, 191, 477 A.2d 1328, 1330 (1984).

In reviewing the record made of appellant's first guilty plea colloquy, appellant's co-defendant's guilty plea colloquy (for

4. "The guilty plea colloquy must be considered in the light of the overall objective which is to insure that the plea is made with an understanding of the charges and an awareness of the consequences. *Commonwealth v. McNeill,* 453 Pa. 102, 106, 305 A.2d 51 (1973)." *Commonwealth v. Johnson,* 460 Pa. 169, 174, 331 A.2d 473, 477 (1975).

which appellant was present), and appellant's last guilty plea colloquy, it is clear that at one point or other appellant was eventually made aware of each of the elements of the crimes to which he plead guilty. Moreover, the record also includes appellant's affirmative admission on the record that he fully understood the nature of the crimes for which he was charged.

THE COURT: Now, I would ask each of you, are each of you in fact pleading guilty because you are satisfied that you are guilty to all of these different very serious offenses which are charged against you, is that your reason for pleading guilty that because you are satisfied that you really are guilty, Mr. Metzler?

MR. METZLER: Yes, sir.

THE COURT: Mr. Iseley?

MR. ISELEY: Yes.

(N.T. 9/19/93 47–48). It is therefore fatuous for appellant to suggest now that he was unaware of the nature of the charges brought against him merely because the trial court failed to fully re-explain each and every element of the charges during his second colloquy. The trial court was under no duty to engage in such a rote and purposeless exercise in redundancy. Under the totality of the circumstances, it is clear that appellant was well aware of the nature of the charges to which he plead guilty. Accordingly, we conclude that appellant's underlying claim of error is without merit. As such, appellant's second contention that his plea counsel was ineffective must fail.

Judgment of sentence Affirmed.

MONTGOMERY, J., concurs in the result.